# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| KEITH LEWALSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:08-CV-311 PPS |
| | ) |
| SANLO MANUFACTURING CO., INC., | ) |
| SANLO, INC., and SANLO | ) |
| MANUFACTURING CO. INC. | ) |
| RETIREMENT PLAN, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

When Keith Lewalski retired after 31 years of service to Sanlo Manufacturing Co. he was undoubtedly looking forward to retiring in comfort. Lewalski submitted his retirement papers expecting to receive his pension in a lump sum payment. But after leaving the company, he was told by the powers that be that he was out of luck. The plan was underfunded, and since Lewalski was a highly compensated employee, federal law did not require the lump sum payment. Lewalski responded by filing this lawsuit against Sanlo and the administrators of Sanlo's Retirement Plan. Lewalski's four-count complaint brought under ERISA includes claims for denial of plan benefits, breach of fiduciary duties, failure to disclose plan information and liability under promissory estoppel. Defendants have moved to dismiss the latter three of these claims. (DE 10.) For the following reasons, the motion is granted in part.

## I. BACKGROUND

Lewalski retired from Sanlo on March 10, 2006, after nearly 31 years of service. (Compl. ¶¶ 6-7.) Lewalski participated in Sanlo's Retirement Plan, which is a tax-qualified defined benefit pension plan subject to the Employee Retirement Income Security Act, 29 U.S.C.

§ 1001, *et seq.* (*Id.* ¶ 4.) Before Lewalski left Sanlo, several trustees and administrators of the Plan informed him that he would receive a lump sum distribution of his accrued benefits upon termination of his employment. (*Id.* ¶ 15.) Just prior to his retirement, Lewalski requested distribution of his accrued benefits under the Plan. (*Id.* ¶ 16.) Then on May 10, 2006, he requested that this payment be made to him in a lump sum distribution. (*Id.* ¶ 17.)

The Plan, however, wasn't anxious to pay up because, as it turned out, the Plan was not fully funded. The Plan claimed that Lewalski was a highly-compensated plan participant, as defined by 26 C.F.R. § 1.414(q)-1. According to the Plan, this fact allowed them to deny the lump sum request. (Compl. ¶¶ 18-20.) Sanlo told Lewalski that he could only get the lump sum distribution if he first provided a bond, letter of credit, or other form of security to the Plan. (*Id.*) Lewalski appealed the denial of his lump sum request, but it was denied. (*Id.* ¶¶ 23-24.)

Lewalski's complaint against Sanlo and the Plan administrators has four counts. First, Lewalski alleges the Plan improperly denied his request for lump sum and disability benefits. (*Id.* ¶¶ 30-36.) Second, Lewalski claims Sanlo breached its duties as a fiduciary of the Plan by: allowing other highly-compensated employees to receive similar lump sum distributions without first providing a bond; repeatedly providing inaccurate information to Plan participants; issuing late employee benefit statements to Lewalski; miscalculating benefits; inconsistently applying the Plan's terms to participants; and applying the Plan's terms in a discriminatory manner as to Lewalski. (*Id.* ¶¶ 40-51.) Third, Lewalski says he requested certain plan documents and the Plan administrator failed to produce these documents within the time frame permitted under ERISA. (*Id.* ¶¶ 53-64.) Fourth, Lewalski claims Defendants should be estopped from denying his requested benefits when they made misrepresentations to him that his benefits were payable as a lump sum distribution and he relied on those representations to his detriment. (*Id.* ¶¶ 66-74.)

Defendants seek dismissal of Counts Two, Three and Four of the Complaint.

## II. DISCUSSION

The minimum requirements for pleading a claim for relief are contain in Federal Rule of Civil Procedure 8. That rule requires, in pertinent part, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) meanwhile provides for the dismissal of claims that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

In 2007, the Supreme Court retooled its interpretation of the pleading standards in the context of a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007). In *Bell Atlantic*, the Court stated that the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (brackets omitted). Instead, the Court held that the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* In so holding, *Bell Atlantic* retired the oft-quoted statement from *Conley v. Gibson*, 355 U.S. 41 (1957), that a complaint survives a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atl.*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46).

The Seventh Circuit has cautioned courts not to overread *Bell Atlantic*. *See Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008). *Bell Atlantic* essentially imposes "two easy-to-clear hurdles." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must give enough detail to give fair notice of the claim. *Id*. Second, the allegations must plausibly suggest that plaintiff has a right to relief, above a

3

speculative level. *Id.* Importantly, *Bell Atlantic* did not change the basic rule that "notice pleading remains the standard." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs. Inc.*, 536 F.3d 663, 667 (7th Cir. 2008).

**A.     Breach of Fiduciary Duties**

ERISA was created to enact safeguards with respect to the establishment, operation and administration of employee benefit plans. *See* 29 U.S.C. 1001(a). In Count Two of his Complaint, Lewalski seeks equitable remedies under Sections 502(a)(2) and 502(a)(3) of ERISA for Sanlo's alleged breaches of its fiduciary duty to the Plan. Specifically, Lewalski claims Sanlo exposed the Plan to sanctions and penalties under ERISA and the Internal Revenue Code by making lump sum payments of accrued benefits to other highly compensated employees. (Compl. ¶¶ 43-44.) He further claims Sanlo injured him and others by providing inaccurate information to participants, submitting late benefit statements, miscalculating benefits, and inconsistently applying the Plan's terms to participants. (*Id.* ¶ 45-46.) The remedy he seeks is an independent accounting of the Plan and dismissal of the Plan's current trustees. (*Id.* ¶ 51.)

Under section 502(a)(1)(B), a participant can sue to recover benefits due under the plan. 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(2) meanwhile permits an individual plan participant to bring an action for breach of fiduciary duty, and if he prevails he can obtain equitable relief including removal of the fiduciary. 29 U.S.C. 1109. But relief under this section inures only to the plan, not the individual. *See Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 863 (7th Cir. 1997). Section 502(a)(3) also allows equitable relief for claims against fiduciaries. 29 U.S.C. § 1132(a)(3). But in contrast to Section 502(a)(2), it allows for individual relief. *See Steinman v. Hicks*, 352 F.3d 1101, 1102 (7th Cir. 2003).

The Supreme Court has cautioned against using the breach of fiduciary duty provisions of ERISA to litigate ordinary benefits claims, where ERISA already provides adequate relief under Section 502(a)(1)(B) for such injuries. *See Varity Corp. v. Howe*, 516 U.S. 489, 514-15 (1996); *Herman v. Cent. States, Se. & Sw. Areas Pension Fund*, 423 F.3d 684, 695 (7th Cir. 2005). And "some Courts of Appeals have accordingly prevented plaintiffs from recasting what are in essence plan-derived benefit claims . . . as claims for fiduciary breaches." *LaRue v. DeWolff, Boberg & Assocs. Inc.*, 128 S.Ct. 1020, 1027 (2008) (Roberts, J., concurring). In this case, Lewalski claims Sanlo breached its fiduciary duties, in part, by miscalculating participants' benefits. To the extent he complains that his own benefits were miscalculated, Lewalski has a remedy under Section 502(a)(1)(B) and thus he cannot tack on a redundant fiduciary claim. And to the extent he is attempting to litigate the benefits claims of others, he has no standing to do so, nor has he brought this lawsuit as a class action.

The remainder of Lewalski's breach of fiduciary duty claims – providing misinformation, delaying benefit statements, discriminatory treatment of participants, and exposing the plan to federal tax violations – are separate and distinct from his denial of benefits claims. Lewalski seeks as a remedy for these violations dismissal of the Plan's current trustees and an independent accounting of the Plan. The statute provides for dismissal of plan trustees as a remedy for violations of Section 502(a)(2). *See* 29 U.S.C. §§ 1109, 1132(a)(2). And district courts have recognized accounting as an equitable remedy for breaches of fiduciary duties. *See, e.g., Beesley v. Int'l Paper Co.*, 2009 WL 260782, at *5 (S.D. Ill. 2009); *Chao v. Hochuli*, 244 F.Supp.2d 92, 99 (E.D.N.Y. 2003). It is too early to tell whether these remedies would be merited under the facts alleged in this case. But if Lewalski does prevail and persuades me to grant such relief,

these remedies would inure to the benefit of the plan, not himself individually. Therefore, Lewalski has stated a claim for relief under ERISA Section 502(a)(2).

But Lewalski cannot also proceed on his breach of fiduciary duty claims under Section 502(a)(3). While that section does permit individual plan participants to pursue claims against fiduciaries, it is intended as a "safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *See Varity*, 516 U.S. at 512. No such safety net is needed here. As described above, the only equitable remedies sought by Lewalski are available under Section 502(a)(2), and there is nothing in his prayer for relief that cannot be obtained through that section. Therefore, his claim under Section 502(a)(3) must be dismissed.

Sanlo further contends that, even if Lewalski has stated a breach of fiduciary duty claim, he cannot pursue it in federal court because he failed to allege that he exhausted his administrative remedies. It is true that "[a]s a prerequisite to filing suit, an ERISA plaintiff must exhaust his internal administrative remedies." *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002). But failure to exhaust administrative remedies is an affirmative defense, and a plaintiff need not plead around affirmative defenses. *See Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008). In any event, there are exceptions to the exhaustion requirement, namely "where there is a lack of meaningful access to review procedures or if pursuing such internal remedies would be futile." *See Hess v. Reg-Ellen Mac. Tool Corp. Employee Stock Ownership Plan*, 502 F.3d 725, 729 (7th Cir. 2007). Lewalski tells me in his response brief that he intends to rely on those exceptions. Therefore, dismissal for failure to exhaust administrative remedies would be premature.

### B. Violation of Disclosure Requirements

ERISA Section 502(c)(1) grants federal courts discretion to penalize a plan administrator $110 per day for failure to honor a participant's request for plan documents within 30 days of the request. *See* 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1; *see also Lowe v. McGraw-Hill Cos., Inc.*, 361 F.3d 335, 338 (7th Cir. 2004). Lewalski asserts in Count Three of the Complaint that the Plan administrators failed to provide documents in response to a request made on October 18, 2004, and again when he appealed the denial of his lump sum payment demand. (Compl. §§ 52-64.) The Plan administrators counter that Lewalski's claim as to the 2004 request is barred by the statute of limitations.

ERISA does not specify a limitations period for actions brought under the civil enforcement provisions of Section 502. So I must apply the most analogous state statute of limitations, as long as it is consistent with federal law and policy. *See Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 65 (7th Cir. 1996); *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 464-65 (7th Cir. 1991). In doing so, I must characterize the essence of the claim, decide which state statute is most closely analogous to the action, and apply the most appropriate limiting principle. *See Cent. States, Se. & Sw. Areas Pension Fund v. Jordan*, 873 F.2d 149, 152 (7th Cir. 1989).

The few courts which have addressed the limitations period for disclosure violations brought under Section 502(c)(1) have taken dramatically different approaches. The Seventh Circuit when faced with this issue indicated it "might be inclined to find that the . . . statute of limitations for statutory penalties applies to § 1132(c) claims," but declined to directly hold as much because the argument had been waived at the district court level. *Anderson v. Flexel, Inc.*,

47 F.3d 243, 247 (7th Cir. 1995). Consistent with the Seventh Circuit's dicta, two other circuits – the Fourth and the Eighth – have characterized Section 502(c)(1) as a statutory penalty provision to punish noncompliance, and thus applied the forum state's limitations period for actions upon a statute for a penalty or forfeiture. *Iverson v. Ingersoll-Rand Co.*, 125 Fed. Appx. 73, 76-77 (8th Cir. 2004); *see also Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 337 (4th Cir. 2009). By contrast, the Ninth Circuit reasoned that the provision was compensatory, rather than penal, thus triggering a different limitations period. *See Stone v. Travelers Corp.*, 58 F.3d 434, 438-39 (9th Cir. 1995). The Fifth Circuit meanwhile applied the state statute of limitations for breach of fiduciary actions. *See Hattenberg v. Red Adair Co. Inc. Employees' Profit Sharing Plan*, 79 Fed. Appx. 709, 715 (5th Cir. 2003).

Despite the lack of clear direction, the Seventh Circuit has articulated that the "purpose of the [Section 502(c)(1)] penalties is to induce the plan administrator to comply with the statutory mandate rather than to compensate the plan participant for any injury he suffered as a result of non-compliance." *See Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 806 (7th Cir. 2009). I don't think the use of the word "penalties" in the above quote is by accident. And since the purpose behind the provision is to force compliance with the disclosure requirement rather than compensate plan participants, I am persuaded that the Seventh Circuit would adopt the Eighth and Fourth Circuit's reasoning and apply Indiana's statute of limitations for a forfeiture of penalty provided by statute.

Lewalski's alternative suggestion – that I apply Indiana's ten year statute of limitations for contract claims – is unpersuasive. It is true that most circuits, including the Seventh, have concluded that ERISA benefits claims brought under Section 502(a)(1)(B) are subject to the

local state statute of limitations for contract claims. *See Daill*, 100 F.3d at 65; *see also Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1137 (7th Cir. 1992). But unlike those cases, the cause of action for a disclosure violation does not arise from the written benefits plan. Instead, that claim comes from ERISA itself. It is sensible to rely on the statute of limitations for contract actions when evaluating a claim that the terms of the plan were violated. In essence, the plan is a contract between the plan administrators and the plan participants. But when the cause of action has nothing to do with the language of the plan, there is no persuasive reason to think that the statute of limitations for contract claims is the most analogous limitation period.

In Indiana, the limitations period for statutory penalty claims is two years. *See* IND. CODE § 34-11-2-4. This means that any claim arising from Lewalski's October 18, 2004 plan document request is untimely because this lawsuit was filed in June 2008 – over three years later. However, Lewalski states that a second request for plan documents was made when he appealed the Plan's denial of his request for lump sum payment of his benefits. (Compl. ¶ 59.) Sanlo does not challenge the timeliness of his claim as it pertains to that second request, so that claim may proceed.

**C.    Promissory Estoppel**

While the terms of a written plan document ordinarily govern the administration of an ERISA plan, "statements or conduct by individuals implementing the plan can . . . estop an employer from enforcing the plan's written terms in extreme circumstances." *Kannapian v. Quaker Oats Co.*, 507 F.3d 629, 638 (7th Cir. 2007). Lewalski asserts a promissory estoppel claim in this case and Defendants argue that it must be dismissed for two reasons. First, they contend Lewalski has not sufficiently alleged the elements of such a claim. In order to prevail

9

on a promissory estoppel theory in the ERISA context, a plaintiff must show a knowing misrepresentation made in writing and reasonable reliance on that representation. *Kannapian*, 507 F.3d at 638. In this case, Lewalski alleges he had several conversations with third-party Plan administrators in which they informed him he would eligible to receive lump sum payment of his benefits. (Compl. ¶¶ 66-71.) He further states that these individuals all referred him to the Summary Plan Description and told him he should rely on that document because the entire plan was too complicated. (*Id.* ¶ 71.) Alleging that he relied on Defendants' misrepresentations to his detriment, Lewalski asserts Defendants should be estopped from denying him a lump sum payment of his benefits. (*Id.* ¶¶ 73-74.).

These allegations provide Defendants with fair notice of the grounds of Lewalski's promissory estoppel claim. Defendants nonetheless contend the allegations are insufficient. For example, Defendants complain Lewalski has not sufficiently explained *how* he plans to establish that the Plan administrators' alleged misrepresentations were made knowingly. But to put this burden on Lewalski at the pleading stage, before any discovery has been taken, would be at odds with notice pleading. They also point out that the alleged misrepresentations were made orally. Although a misrepresentation in writing is an essential element of a promissory estoppel claim, "[o]ral misrepresentations may become grounds for ERISA estoppel . . . where plan documents are ambiguous or misleading." *Kannapian*, 507 F.3d at 638. Lewalski's allegations indicate that he was referred to the summary plan document and led to believe that he would be eligible for a lump sum payment. If Lewalski can prove that the plan documents were ambiguous or misleading, then he may be able to rely on the oral misrepresentations of the Plan's

administrators to establish his promissory estoppel claim. The proof is in the pudding. But to dismiss the claim at this early stage for insufficient pleading would be premature.

Second, Defendants argue that the Seventh Circuit does not recognize estoppel claims for employer-funded defined benefit pension plans. The Seventh Circuit has recognized ERISA estoppel claims in cases involving unfunded welfare plans. *See, e.g., Black v. TIC Investment Corp.*, 900 F.2d 112, 115 (7th Cir. 1990). But whether estoppel is a permissible basis for claiming benefits from an employer-funded plan remains an unsettled question. When faced with the issue, the Seventh Circuit has repeatedly declined to offer an opinion on whether to permit estoppel in cases involving such defined benefit plans because, in each of those cases, the plaintiffs failed to establish the elements of estoppel. *See Davis v. Combes*, 294 F.3d 931, 939 (7th Cir. 2002); *Downs v. World Color Press*, 214 F.3d 802, 806 (7th Cir. 2000); *Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan*, 188 F.3d 895, 900 (7th Cir. 1999); *Krawczyk v. Harnischfeger Corp.*, 41 F.3d 276, 280 (7th Cir. 1994).

In *Shields*, Judge Posner indicated in his concurring opinion that he "would go even further than [his] colleagues and hold that promissory estoppel can *never* be used to alter the terms of a defined benefit plan." *Shields*, 188 F.3d at 903-04 (emphasis in original). Defined benefit plans, he explained, require complex actuarial calculations in order to guarantee a specified pension benefit to plan participants when they retire. *Id.* at 904-05. The starting point for these calculations is the terms of the plan. *Id.* at 905. Therefore, Judge Posner concluded, allowing amendment of the terms of the plan via promissory estoppel would impair the actuarial soundness of the plan. *Id.* Defendants ask me to adopt Judge Posner's rationale in *Shields* and create a blanket prohibition against estoppel claims in cases involving defined benefit plans. But

11

since the Seventh Circuit has repeatedly declined to prohibit such claims outright, I am inclined to allow Lewalski to flesh out the claim in discovery. That will enable me to have a fuller record when deciding the issue on summary judgment.

### III. CONCLUSION

For the foregoing reasons, Defendants Motion to Dismiss [DE 10] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff Lewalski may proceed on the following claims: Count Two breach of fiduciary duties under 29 U.S.C. § 1132(a)(2); Count Three disclosure violations as to Lewalski's second request for plan documents; and Count Four promissory estoppel. The following claims are hereby **DISMISSED**: Count Two breach of fiduciary duties under 29 U.S.C. 1132(a)(3); and Count Three disclosure violations as to Lewalski's October 18, 2004 plan document request.

**SO ORDERED.**

Dated: May 14, 2009.

                                            s/ Philip P. Simon
                                            PHILIP P. SIMON, JUDGE
                                            UNITED STATES DISTRICT COURT